# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| TODD MACALUSO,<br><br>　　　　　　　Plaintiff,<br>　vs.<br><br>ONE WEST BANK, FSB, a Federal Savings Bank, and OWB REO, LLC, Commissioner of Social Security, a Limited Liability Company<br><br>　　　　　　　Defendants. | CASE NO. 10cv2570-LAB (POR)<br><br>**ORDER DENYING APPLICATION FOR A TEMPORARY RESTRAINING ORDER** |
|---|---|

Plaintiff Todd Macaluso is a distressed homeowner who hasn't kept up with his mortgage and, as a result, lost the title to his home. Pending before the Court is his ex parte application for a temporary restraining order ("TRO") to halt a foreclosure sale. The Court is overly familiar with these cases, having been inundated with them after the collapse of the housing market and subsequent economic downturn in recent years. Macaluso filed his complaint on December 15, 2010, and the TRO application along with it.

## I.　Background

Macaluso was, until recently, the owner of a palatial home in Rancho Sante Fe, California. He purchased the home with a loan from IndyMac bank; Defendant One West Bank ("OWB") subsequently acquired IndyMac and now holds the mortgage. As Macaluso tells it, after OWB acquired the loan, his lawyer's paralegal, Rhonda Lewis, contacted OWB

and attempted to modify the loan. (Compl. ¶ 17; Lewis Decl. ¶ 1.) Lewis and an OWB representative reached an agreement on August 10, 2010: "Plaintiff would (a) pay the sum of $200,000 and (b) pay the balance due to bring the loan current over the next 6 months." (Compl. ¶ 11, 18; Lewis Decl. ¶ 6.) But then OWB reneged, and didn't send Macaluso the loan modification agreement as promised. Why did OWB renege? An OWB representative — not the one who'd negotiated the loan modification — explained to Lewis on August 13, 2010 that "upper management had made the decision not to agree to the terms of the loan modification agreement." (Compl. ¶ 19; Lewis Decl. ¶ 7.) As Lewis recalls their conversation

> He stated that he had dealt with Mr. Macaluso before and implied he should have no problem coming up with the money to reinstate in full because he was a **very prominent** Attorney and had big settlements coming in all the time. He was very snide and uncooperative. He stated any and all negotiations regarding this loan were subject to his approval and processing. I informed him that Mr. Macaluso had about $2,000,000.00 in equity and who in their right mind would risk that . . . . [He] informed me that the bank would only accept full re-instatement or they would foreclose on 8/19/2010.

(Lewis Decl. ¶ 7.) Macaluso maintains he had every intention of performing under the loan modification agreement — and the ability to do so.

OWB then proceeded with a trustee's sale of Macaluso's home. The notice of sale was recorded on April 13, 2010, and the sale itself was scheduled for May 3, 2010, presumably before loan modification negotiations were even initiated. (*See* Ex. D.) The deed of trust was actually transferred, however, on August 25, 2010. (Ex. B.) The recipient-grantee of the deed was OWB REO, LLC, which stands in some corporate relation to OWB. Macaluso alleges that OWB REO is not registered or licensed to conduct business in California or any other state. (Compl. ¶ 3.) In fact, he alleges it is a "sham entity" that receives title from OWB "without a proper 'sale' on the courthouse steps." (Compl. ¶ 20.) He accuses OWB and OWB REO of understating the interest and principal due on the loan in order to seek reimbursement from the Treasury Department. (Compl. ¶ 13(a)–(b).) He also accuses the entities of being incentivized to force a foreclosure to profit from the equity in his home, which has been appraised at $6.2 million. (Macaluso Decl. ¶ 5; Rego Decl. ¶

10.) Macaluso theorizes that OWB's overtures of a loan modification are a ruse, the theory being that OWB can prolong a period of nonpayment by misleading a borrower with the impression that his or her loan will be renegotiated — until the foreclosure date arrives, at which time OWB has a change of heart. (Compl. ¶ 27; Macaluso Decl. ¶ 3.)

The refusal on OWB's part to actually modify Macaluso's home loan and the transfer of title to OWB REO appears to be the core grievance in his complaint, although he makes other allegations that are ubiquitous in foreclosure cases. He maintains he never received a Notice of Default or a Notice to Reinstate.[1] (Compl. ¶ 3, 11.) He maintains OWB has refused to provide him with statements regarding his loan. (Compl. ¶ 23.)

Macaluso requests a TRO

> enjoining Defendants and their agents, employees, representatives, successors, partners, assigns and those acting in concert or in participation with them, their agents, employees, officers, representatives, successors, partners, assigns, and those acting in concert or participation with them, from spending, transferring, disbursing, encumbering, or otherwise interfering with or dissipating any real or personal property without prior Court approval, including but not limited to any money or other consideration that Defendants have received from Plaintiff for any loan, refinance transaction or appraisals made with Defendants and each of them, and any money or other consideration Defendants have received from Plaintiff as a result of their "Loan Modification Scheme" including but not limited to money or other considerations obtained from borrowers, lenders, or other entities for the transaction.

(Compl. ¶ 87.) In other words (if the Court understands Macaluso), he wants Defendants to be enjoined from doing anything with his former property or his money.

## II.   Legal Standard

TROs are for emergencies only. The high hurdle plaintiffs must clear to obtain them "reflect[s] the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 438 (1974). The TRO standard is the same as the preliminary injunction standard, with the additional

---

[1] The Court finds this allegation slightly confusing, considering that Macaluso attached a Notice of Default that was recorded on January 12, 2010 to his complaint. (*See* Ex. D.)

requirement that the applicant show immediate relief is necessary. *See, e.g.*, *Hunt v. Nat'l Broad. Co., Inc.*, 872 F.2d 289, 292 (9th Cir. 1989). *See also* Fed. R. Civ. P. 65(b)(1)(A) (movant must "show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition"). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 374 (2008).

### III.   Discussion

While Macaluso gets the preliminary injunction standard right, and runs through the four prongs in his supporting brief, he misses entirely the *additional* requirement for a temporary restraining order: *immediate* relief must be so necessary that Macaluso would be harmed by even allowing OWB time to respond to his request for injunctive relief. The Court doesn't believe he can make this showing. OWB foreclosed on Macaluso's home in the middle of August, and for three months he has been negotiating with OWB to reach some kind of resolution. (Compl. ¶ 22; Rego Decl. ¶ 7.) There is no indication that OWB REO has a buyer lined up and is about to sell Macaluso's home, nor is there any indication that it is on the brink of doing something with his money. Even though Macaluso seems now to have a firm word from OWB that it "will not entertain any form of reinstatement" (Rego Decl. ¶ 8), the Court sees nothing so urgent here that it cannot wait to hear OWB's side of the story before deciding whether to grant injunctive relief.

Were the Court to run Macaluso's request for injunctive relief through the *Winter* standard, it would find, anyway, that Macaluso hasn't established that he is "likely" to succeed on the merits. *Winter*, 129 S.Ct. at 375. Macaluso's attempt to modify his loan — and OWB's alleged reneging on a loan modification agreement they reached — drives his complaint, and the facts surrounding his lawyer's (or his lawyer's paralegal's) conversations with OWB representatives will undoubtedly present themselves as a classic case of who-said-what, and the Court sees no reason to privilege Macaluso's account. Moreover,

Macaluso's appears to believe OWB had a *duty* to modify his loan, which of course it did not, and the Court sees insufficient evidence to take it as fact that Macaluso and OWB entered into a binding agreement to modify his loan that OWB then breached.

### IV. Conclusion

Macaluso's request for a TRO is denied. The Court sees no reason why *emergency* relief is necessary in this case, and, considering Macaluso's pleadings in their entirety, the Court finds he has not shown he is likely to prevail on the merits — the nature of his allegations notwithstanding. If Macaluso chooses to pursue injunctive relief, the Court will calendar a preliminary injunction hearing on Monday, January 10, 2011 at 11:30 a.m. Macaluso should serve OWB as soon as possible so that OWB may file an opposition brief on January 3, 2011. Macaluso may file a reply brief no later than January 6, 2011.

**IT IS SO ORDERED**.

DATED: December 17, 2010

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge